IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WADLEY CRUSHED STONE COMPANY, LLC, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | CASE NO. 3:17-cv-852-SMD |
| POSITIVE STEP, INC., d/b/a 1st QUALITY EQUIPMENT COMPANY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Wadley Crushed Stone Company, LLC, ("Plaintiff") filed a Fourth Amended Complaint against Positive Step, Inc. d/b/a 1st Quality Equipment Company ("1st Quality") and Thomas W. Curley ("Curley") (collectively "Defendants") for breach of contract and misrepresentation. (Doc. 67). Before the Court is Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 68). For the reasons that follow, Defendants' Motion to Dismiss is due to be GRANTED in part and DENIED in part.

## I.  STATEMENT OF FACTS[1]

Plaintiff is an Alabama corporation doing business as a granite rock quarry. (Doc. 67, ¶¶ 1, 5). Defendant Positive Step is a Georgia corporation that holds itself out as having experience in the aggregate business helping customers increase productivity, reduce costs, and maintain high production through the selection of the highest quality new and used

---

[1] The Statement of Facts is taken from Plaintiff's Fourth Amended Complaint (Doc. 67).

equipment. *Id.* ¶¶ 2, 19. Defendant Curley is a citizen of Georgia and the owner of Defendant 1st Quality. *Id.* ¶ 3.

In 2012, Defendant 1st Quality executed a contract with Plaintiff for a "500 TPH Portable Granite Plant" ("the Plant") to be located on Plaintiff's property in Wadley, Alabama. *Id.* ¶ 21; (Doc. 69-1) at 2. The Plant was to consist of three separate areas: (1) the primary section; (2) the secondary section; and (3) the rail loading system. (Doc. 67) at 3-4. Prior to executing the contract, Plaintiff advised Defendants that the Plant needed to produce 500 tons-per-hour of merchantable granite rock that consisted of 60% railroad quality ballast capable of being loaded directly into railcars at 2,000 tons-per-hour. *Id.* at ¶ 22. These specific requirements were needed so that Plaintiff could satisfy its commitment to a railroad company and to its other customers. *Id.* at ¶ 23. Plaintiff advised Defendants that it did not have adequate expertise to determine what size or types of equipment or the configuration of the equipment that would need to meet the required production, specification, yield, and loading capabilities. *Id.* at ¶ 25.

As part of their contract with Plaintiff, Defendants specified all of the equipment needed and hired engineering consultants to engineer, design, and recommend the layout for the granite plant so that it would meet Plaintiff's specified production, specification, yield, and loadout requirements. *Id.* ¶ 26. Because Defendant First Quality was not licensed as a general contractor in Alabama, it recommended Plaintiff hire Gaston Construction ("Gaston") to build the Plant, which Plaintiff did. *Id.* at 30. Gaston paid Defendants a 10% commission, and Defendants advised Gaston on the proper placement, installation, and operation of the various components of the Plant while updating Plaintiff on the course of

2

construction and making recommendations for changes along the way. *Id*. at ¶¶ 31, 32. The Plant was completed and put into operation in late 2012. *Id.* ¶ 33. During and after the completion of the Plant, Defendants provided training to Plaintiff's employees as to the best practices for operation of the Plant and its various components. *Id*. at 34.

Prior to entering the contract, Defendants represented to Plaintiff that the Plant had "a 20-year useful life." *Id.* ¶ 35. After installation, however, some of the individual components of the Plant that had been recommended by Defendants were found to be incapable of producing the represented production, specification, yield, and loadout requirements. *Id*. at ¶ 36. When confronted with the production problems, Defendants, by and through their employees, represented to Plaintiff that the production problems were not caused by deficient engineering, design, or equipment, but were the fault of quarry management, operators, or other elements beyond their control and not related to the Plant engineered, designed, specified, and constructed under the supervision of Defendants. *Id*. at ¶ 39.

Plaintiff purchased additional equipment from Defendants and other vendors in an attempt to address these issues and delayed replacing the equipment originally specified. *Id.* ¶ 41. Ultimately, Plaintiff ceased using the equipment and layout provided by Defendants and replaced it with alternative equipment because of the insufficiencies with the equipment specified by Defendants and the engineering/design/layout provided by Defendants' engineers and subcontractors. *Id.* ¶ 42. As a result, Plaintiff suffered financial damages due to loss of sales and additional operating costs. *Id.* ¶ 43. Plaintiff also was unable to meet its minimum commitments to the railroad company in 2013, 2014, and

2015. *Id*. at ¶ 44. Plaintiff ultimately borrowed $5 million to replace the components of the primary section. *Id*. at ¶ 47.

## II. PROCEDURAL BACKGROUND

Plaintiff initially filed suit against the corporate Defendant on November 15, 2017, in the Circuit Court for Randolph County, Alabama. (Doc. 1-1). Defendant 1st Quality removed the case to this Court, answered, and counterclaimed. (Docs. 1, 7). Plaintiffs filed a First Amended Complaint on December 27, 2017, which Defendant answered on January 11, 2018. (Docs. 10, 13). The Court granted Plaintiff leave to file a Second Amended Complaint to name Defendant Curley, which Plaintiff filed in May 2018. (Docs. 32, 33). The Court also granted Plaintiff leave to file a Third Amended Complaint, which Plaintiff filed in June 2018. (Docs. 43, 46). The Third Amended Complaint asserted breach of contract claims and a claim for misrepresentation against Defendants. (Doc. 46).

Defendants filed a Motion to Dismiss Plaintiff's Third Amended Complaint, arguing that the breach of contract claims were due to be dismissed because they were barred by the applicable four-year statute of limitations under the UCC.[2] (Doc. 49). Additionally, Defendant Curley contended that the breach of contract claims were due to be dismissed as to him because those claims failed to allege any facts indicating that he was a party to the contract. (Doc. 49). Defendants further moved to dismiss Plaintiff's misrepresentation claim in the Third Amended Complaint, arguing that it failed to meet the specificity requirement under the Federal Rules of Civil Procedure for pleading fraud. *Id*.

---

[2] Defendants previously raised a statute of limitations defense in their Answer and Affirmative Defenses. *See* (Docs. 7, 13, 36).

Plaintiff responded in opposition to Defendants' Motion, but also filed a Conditional Motion for Leave to Amend (Doc. 53) in the event that the Court determined that Plaintiff's Third Amended Complaint failed to adequately plead the tolling of the statute of limitations and/or Plaintiff's fraud allegations. The United States Magistrate Judge previously assigned to the case held a hearing on Defendants' Motion and determined that it should be granted, but also determined that Plaintiff's Conditional Motion for Leave to Amend (Doc. 53) its Third Amended Complaint should be granted.

Regarding Defendants' Motion to Dismiss the breach of contract claims, this Court found that the Motion should be granted because the UCC's four-year statute of limitations applied to the breach of contract claims. (Doc. 66). This Court reasoned: "[t]hough not limited to the machinery, the parties' commercial arrangement principally related to physical goods sold and delivered by Positive Step." *Id*. at 6. This Court continued: "[a]bsent some countervailing circumstances, such arrangements are treated as the sale of goods subject to the dictates of Article 2 of the Uniform Commercial Code, even if ancillary services are provided and even though some of the goods delivered take on characteristics of fixtures." *Id*. This Court then applied the UCC's four-year statute of limitations, noting that by the allegations of the Third Amended Complaint, the contract was entered into in 2012 and the Plant was operational in late 2012, but Wadley did not file suit until November 2017. *Id*. at 5. Nonetheless, the Court afforded Plaintiff "a final opportunity to allege any additional facts it believes . . . could avoid the application of the statute of limitations." *Id*. Plaintiff filed its Fourth Amended Complaint (Doc. 67) on November 14, 2018.

In its Fourth Amended Complaint, Plaintiff sues Defendant 1st Quality for breach of contract due to (1) its failure to provide a portable granite plant that could produce 500 tons-per-hour (Count I) and (2) its failure to design and provide equipment for a rail ballast loadout system that could load 2,000 tons of granite per hour (Count II). (Doc. 67) at 15-18. Additionally, Plaintiff sues Defendant 1st Quality and Defendant Curley for misrepresentation (Count III) as to the amount of granite per hour that could be produced by the Plant and the amount of granite that could be loaded per hour into rail cars. *Id.* at 7-8.

Similar to their Motion to Dismiss Plaintiff's Third Amended Complaint, Defendants move to dismiss Plaintiff's breach of contract claims because they are barred by the UCC's four-year statute of limitations. (Doc. 69) at 11-23. Defendants also move to dismiss Plaintiff's misrepresentation claim based upon Alabama's two-year statute of limitations for fraud claims. *Id.* at 24-31.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

"accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

In considering a motion to dismiss, a court is ordinarily limited to evaluation of matters alleged in the operative complaint. *See generally* Fed. R. Civ. P. 12(d). In appropriate cases, however, a court may also take into account additional matters presented in support of the motion when those matters are intrinsic to the claims and are not reasonably in dispute. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002) (holding that the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed). In this case, the contract between the parties is attached to Defendants' Motion to Dismiss, and Plaintiff has not disputed the authenticity of the contract. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting that "[i]n this context, 'undisputed' means that the authenticity of the document is not challenged"). Further, because the contract is essential to the determination of Plaintiff's breach of contract claims, the undersigned finds that the contract meets the centrality requirement. Therefore, for these reasons, the contract between the parties will be considered herein without converting Defendants' Motion to Dismiss into a motion for summary judgment.

## IV. ANALYSIS

Because this Court is sitting in diversity, it will apply the choice of law rules of the State of Alabama. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Alabama's choice of law rules, the law of the forum governs procedural matters. *Reece v. Intuitive*

7

*Surgical, Inc.*, 63 F. Supp. 3d 1337, 1339 (N.D. Ala. 2014) (citing *Middleton v. Caterpillar Indus., Inc*., 979 So. 2d 53, 57 (Ala. 2007)). Generally, Alabama law treats statutes of limitations as procedural. *Randolph v. Tenn. Valley Auth*., 792 F. Supp. 1221, 1222 (N.D. Ala. 1992). Alabama has adopted the UCC's statute of limitations, which sets forth that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."[3] Ala. Code § 7-2-725(1). Therefore, if the contract between the parties is one for goods, the UCC's four-year statute of limitations applies to the breach of contract claims. *See BMC Indus., Inc. v. Barth Indus., Inc*., 160 F.3d 1332, 1329 (11th Cir. 1998) ("The UCC's Article 2 only applies to 'transactions in goods.'"). If the contract is not for goods, a six-year statute of limitations applies to the breach of contract claims.[4] Ala. Code § 6-2-34(9). This determination is critical to the survival of Plaintiff's breach of contract claims as suit was filed approximately five years after the Plant was completed.

In order to determine which statute of limitations applies, the Court must first decide if the contract between the parties is one for goods or one for services. The parties do not appear to agree whether Alabama law or Georgia law should govern this determination. *See* (Doc. 52) at 5, n.1 (noting that Plaintiff appears to suggest that Alabama law applies); (Doc. 69) at 16-17 (noting that Defendants cite both Georgia and Alabama law to support their position regarding whether the contract is for goods or for services). The Court

---

[3] Notably, Georgia law also adopts the UCC's statute of limitations. Ga. Code § 11-2-725.

[4] Georgia law also applies a six-year statute of limitations for contracts that are not for the sale of goods. O.C.G.A. § 9-3-24.

reserves judgment as to this issue, as it is not determinative of the undersigned's decision at this time. However, as discussed further below, such a determination *could* impact whether the UCC ultimately applies.

Finally, the Court recognizes that the question of whether a contract is for goods or services is generally one of fact. *BMC Industries*, 160 F.3d at 1331. However, "[w]hen there is no genuine issue of material fact concerning the contract's provisions . . . a court may determine the issue as a matter of law." *Id.*

### A. Whether Wadley's Breach of Contract Claims Should Be Dismissed as Untimely.

By the allegations of the Fourth Amended Complaint, the contract between Defendants and Plaintiff was executed in January 2012 and the Plant became operational in late 2012. (Doc. 67, ¶¶ 21, 33). Plaintiff did not file suit until November 2017, more than five years after the contract was executed. (Doc. 1-1). Defendants argue that, because the contract with Plaintiff was for the sale of goods, Plaintiff's breach of contract claims are time-barred by the four-year statute of limitations set forth in the Uniform Commercial Code ("UCC"). (Doc. 69) at 11-24. Plaintiff argues that the UCC's statute of limitations does not apply because the contract between it and Defendant 1st Quality was not for goods, but for services. (Doc. 73) at 4-13. Further, Plaintiff argues that Defendants' Motion to Dismiss is due to be denied because it is simply too early in the litigation to make a finding as to whether the contract is for goods or for services. *See generally* (Doc. 73).

The undersigned finds that there is insufficient information to determine as a matter of law whether the contract between the parties is one for goods or one for services. Taking

as true the facts alleged in the Fourth Amended Complaint and construing them in the light most favorable to Plaintiff, *as is required at this stage*, it is plausible that the contract between the parties is for services. As discussed below, this matter requires further factual development.

The two-page contract provided to the Court by Defendant, which memorializes the agreement with Plaintiff, begins:

> Dear Perry,
>
> The following is our quotation for this 500 TPH Portable Granite Plant. Most of the numbers correspond with the numbers on the layout provided by MA Bielski and associates[.]

(Doc. 69-1) at 2. The contract then sets forth twenty-seven line items that contain a description of the good or service provided along with its corresponding cost. *Id*. at 2-3. These line items total $4,059,224.43. *Id*. Twenty-five of the line items reflect the purchase of equipment. *Id*. In total, these twenty-five line items cost $3,894,223.43. *See id*. One of the line items reflects the cost of "engineering, which costs $165,000.00." *Id*. at 3. Another line item reflects the cost of "installation/setup/calibration of scales," which costs $6,950.00. *Id*.

After setting forth the total price of the Plant and the cost of the individual goods and services to be provided, the contract provides terms of payment. *Id*. at 3. Within these terms, the contract allows for the payment of certain items after they have been delivered on site. *Id*. The contract states that pricing does not include "Freight from Point of Manufacture" and notes that prices "*could vary after final engineering of plant related*

*structures*." *Id*. at 4 (emphasis in original). The contract is signed by Perry Donahoo, managing member of Plaintiff, on January 12, 2012. *Id*. at 5.

Because the contract involves the sale of machinery along with engineering, installation, and calibration, the contract between the parties is a "hybrid" contract—i.e., it is a contract that provides for both goods and services. *See BMC Industries, Inc*., 160 F.3d at 1329 (noting that contracts involving both goods and services are categorized as "hybrid contracts"). There is no Alabama or Georgia caselaw (whichever ultimately applies) cited by the parties or found by the Court that is directly on point as to whether a contract for a working granite plant is a contract for a good or for a service. *But see Cty. Asphalt, Inc. v. Lewis Welding & Eng'g Corp*., 323 F. Supp. 1300 (S.D.N.Y. 1970) (applying the UCC to the purchase and installation of asphalt plants at two locations as a "transaction in goods")[5]. When faced with a hybrid contract, many courts apply the "predominant factor" test to determine whether the contract is primarily for goods or for services. *See BMC Indus., Inc*., 160 F.3d at 1330. Under the predominant factor test, courts examine contracts to determine "whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved[.]" *Id*. at 1329-30. It is notable that, should Alabama caselaw apply, there are no cases found by the undersigned that explicitly or implicitly adopt the "predominant factor" test. *See Thorn's Diesel Serv., Inc. v. Houston Ship Repair, Inc*., 233 F. Supp. 2d 1332, 1339-40 (M.D. Ala. 2002) (noting that "[r]esearch has not revealed an

---

[5] Notably, *County Asphalt* does not provide reasoning as to why that court concluded that an asphalt plant was a good. 323 F. Supp. 1300, 1304-05.

Alabama state court decision that has adopted, either expressly or implicitly, the predominant factor test" and thereby showing hesitancy "to adopt and apply the predominant factor test as Alabama's standard for determining whether the contract is for goods or for services"). Should Georgia law apply, the "predominant factor" test is likely applicable. *See S. Tank Equip. Co. v. Zartic, Inc*., 471 S.E. 2d 587, 588 (Ga. App. 1996) (noting that "[w]hen the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and the UCC applies even though a substantial amount of service is to be rendered in installing the goods") (internal citations omitted).

Whether the predominant factor test is ultimately applied in this case, the undersigned finds that, accepting the facts alleged in Plaintiff's Fourth Amended Complaint as true and construing them in the light most favorable to Plaintiff, it is at least plausible that the contract between the parties is for services instead of goods. While it is clear that the contract calls for "engineering," it is unclear to the undersigned what "engineering" specifically entails. Plaintiff's Fourth Amended Complaint alleges that Defendants, *inter alia*, agreed to design and build a "turnkey finished and functioning granite plant" that would "meet the required and agreed upon output requirements" set for the by Plaintiff. (Doc. 67) at ¶ 28. Plaintiff further alleges that, in order to produce a functioning granite plant, Defendant provided "engineering and design services to configure the composition and layout of the entire Plant." *Id*. at ¶ 27. Even after completion of the project, Plaintiff alleges that "Defendants provided training to employees of Plaintiff as to [the] best practices for operation of the Plant . . . as well as product servicing." *Id*. at ¶ 34. These interactions occurred at least until February 18, 2015. *Id*. at ¶ 39.

12

Notably, nothing in the contract specifically reflects these specific services. It is plausible to the undersigned that these services are accounted for within the engineering line item of the contract. It is also plausible to the undersigned that these services are subject to another contract between the parties or to no contract at all.  Regardless, taking as true the Fourth Amended Complaint's allegations regarding the services Defendants agreed to provide, the undersigned cannot find as a matter of law that the contract between the parties was for goods.[6] Accordingly, Defendants' Motion to Dismiss Plaintiff's breach of contract claims is due to be denied at this stage, pending further development of the record.

### B. Whether Wadley's Misrepresentation Claim Should Be Dismissed as Untimely.

Defendants argue that Plaintiff's misrepresentation claim must be dismissed because Plaintiff failed to file it within the applicable two-year statute of limitations. (Doc. 69) at 24-31. Alabama, which is the forum state for the misrepresentation claim,[7] sets out a two-year statute of limitations for fraud actions. Ala. Code § 6-2-38(l). Alabama law further provides that the statute of limitations begins to run when "the plaintiff actually

---

[6] The undersigned recognizes that the parol evidence rule may be applicable and could potentially prohibit the admission of certain agreements between the parties that are not memorialized in the contract. However, based upon Plaintiff's alleged facts, it is unclear to the undersigned what services were provided for in the contract. Therefore, the undersigned finds it premature to determine whether the contract is for goods or for services.

[7] In determining which law to apply to the misrepresentation claim, this Court must apply the choice of law rules of the forum state. *Trumpet Vine Invs. v. Union Capital Partners I, Inc.*, 92 F.3d 1110 (11th Cir. 1996). Alabama applies the rule of *lex loci delicti*, which means that Alabama courts apply the law of the state where the injury occurred. *See Fitts v. Minn. Mining & Manuf. Co.*, 581 So. 2d 819, 820 (Ala. 1991). Here, the injury—i.e., the economic impact that resulted from the alleged misrepresentations—occurred in Alabama. *See Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1348 (M.D. Ala. 1998). Therefore, the undersigned will apply Alabama law regarding fraud actions to Plaintiff's misrepresentation claim.

discovered the fact constituting the fraud or until such time as the plaintiff should have discovered such fact in the exercise of reasonable diligence, whichever is earlier." *Jones v. Bank of Am., N.A.*, 2018 WL 4095687, at *8 n. 5 (N.D. Ala. 2018) (citing Ala. Code § 6-2-3).

Here, Plaintiff's Fourth Amended Complaint alleges various misrepresentations made by Defendants spanning from December 14, 2012, to February 18, 2015. (Doc. 67) at ¶ 39. Generally, these alleged misrepresentations are related to Defendants' claims that the production problems the Plant experienced were not caused by its deficient engineering, design or equipment, but instead were the result of Plaintiff's management, operators, or other elements beyond Defendants' control. *Id*. Plaintiff alleges that, at other times, Defendants represented that the plant was "running acceptably and/or would improve to meet the contracted for production targets." *Id*. at ¶ 40.

Plaintiff argues that it reasonably relied upon Defendants' alleged misrepresentations, purchased additional equipment, and delayed replacing the inadequate equipment. *Id*. at ¶ 41. Eventually, Plaintiff replaced portions of the Plant, and borrowed approximately $5 million to do so. *Id*. at ¶¶ 45, 46. Plaintiff does not allege when that replacement occurred. *See generally* (Doc. 67). Defendants, however, assert that public records establish that Plaintiff "borrowed approximately $4 million to replace the equipment and plant layout that were the subjects of the alleged misrepresentations on May

14

14, 2015," and that Plaintiff purchased the equipment no later than August 31, 2015.[8] (Doc. 74) at 20.

Based upon the date that Plaintiff replaced portions of the Plant, Defendants argue that Plaintiff's misrepresentation claim is untimely. *Id*. In other words, Defendants assert that Plaintiff must have known—no later than the time it replaced the equipment—that the statements made by Defendants regarding the causes of the Plant's failure to meet the specified requirements were untrue. *Id*. If so, Defendants argue that the two-year statute of limitations bars suit. *Id*.

The undersigned agrees. In *Grant v. Preferred Research, Inc*., 885 F.2d 795 (11th Cir. 1989), the plaintiff, a law school graduate who was an independent contractor with the defendant performing title examinations, sued the defendant for breach of contract and fraud arising from alleged breaches of the licensing agreement between them. As part of its business operations, the defendant maintained a professional liability insurance policy in the event of errors and omissions committed by its employees and agents. *Id*. at 797. A client of the defendant sued the plaintiff, and the plaintiff submitted the claim to the defendant, who then refused to submit the claim to its insurance carrier. *Id*. The plaintiff then paid the claim out of his own pocket, and subsequently purchased his own errors and omissions policy. *Id*.

---

[8] Defendants attach the UCC Financing Statement for Plaintiff's replacement equipment, which was filed with the Secretary of State. *See* (Doc. 69-4). The undersigned will consider this document without converting Defendants' Motion to Dismiss into one for summary judgment because the document is undisputed and meets the centrality requirement.

At trial, the jury granted a verdict in favor of the plaintiff. *Id*. at 798. However, the Eleventh Circuit overturned this verdict, finding that the trial court should have granted the defendant's motion for judgment notwithstanding the verdict based upon the application of the statute of limitations for fraud actions in Alabama. *Id*. Specifically, this Circuit found that the statute of limitations barred the plaintiff's fraud claim because it began to run "when [the] plaintiff purchased his own errors and omissions policy," which was more than two years prior to the plaintiff filing suit. 885 F.2d at 798. This Circuit reasoned that "[t]o trigger the statute of limitations, [the] plaintiff needed only to have the knowledge that would lead a reasonable person to make further inquiry." *Id*. Therefore, this Circuit found that the "plaintiff's purchase . . . constitute[d] an awareness—or at least a suspicion—that [the defendant's] policy did not provide coverage." *Id*. (internal citations omitted). Accordingly, this Circuit determined that the district court erred in failing to grant the defendant's motion for judgment notwithstanding the verdict on the plaintiff's fraud claim because that claim was barred by the statute of limitations. *Id*. at 799.

Here, Plaintiff was aware—or should have been aware—that the statements Defendants made were fraudulent no later than August 31, 2015, when it made substantial expenditures to replace equipment for the Plant. Plaintiff's own Fourth Amended Complaint supports the conclusion that—at the time the purchase was made—it knew Defendants' statements were fraudulent. The Fourth Amended Complaint states: "Because of the *insufficiencies* with the equipment specified by Defendants and the engineering/design/layout provided by Defendants' engineers and subcontractors, Plaintiff was eventually required to cease using the equipment and layout provided by the

16

Defendants pursuant to the Plant contract and to replace much of the Plant with equipment that was *capable* of handling the granite mined on Plaintiff's property and meeting the agreed production requirements." (Doc. 67) at ¶ 42 (emphasis added). Based upon Plaintiff's own allegation and the common-sense inference drawn from Plaintiff's large financial expenditure to replace the Plant's equipment, the undersigned finds that Plaintiff knew—or should have known—that Defendants' statements were fraudulent no later than August 31, 2015. Therefore, in order to avoid application of Alabama's two-year statute of limitations for misrepresentation claims, Plaintiff was required to file suit on or before August 31, 2017. It did not.

In an attempt to address the statute of limitations problem, Plaintiff states: ". . . Plaintiff does deny it knew in 2015 the equipment provided was not *capable* of meeting the performance promised by Defendant from inception." (Doc. 73) at 16 (emphasis in original). Plaintiff avers that it "learned the original equipment was not *capable* of meeting express promises of future performance at the quarry from blasting tests performed in 2017 which showed that the rock at that location could not be blasted into sizes the specified primary system could efficiently handle with the best of management." *Id*. (emphasis in original). However, this statement does not align with the allegations in Plaintiff's Fourth Amended Complaint, where Plaintiff clearly indicates that it replaced "much of the Plant with equipment that was *capable* of handling the granite mined on Plaintiff's property." (Doc. 67) at ¶ 42 (emphasis added). Plaintiff alleges that this replacement occurred "[b]ecause of the *insufficiencies* with the equipment specified by Defendants and the engineering/design/layout provided by Defendants' engineers and subcontractors[.]" *Id*.

(emphasis added). Plaintiff cannot now attempt to parse words and claim that it did not know at the time it took action to replace the equipment in 2015 that Defendants' statements were supposedly fraudulent. Therefore, the undersigned finds that the statute of limitations bars Plaintiff's misrepresentation claim and it is due to be dismissed.

## V.  CONCLUSION

Accordingly, for the reasons stated above, it is

ORDERED that Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint is GRANTED in part and DENIED in part. Specifically, it is GRANTED as to Plaintiff's Misrepresentation Claim (Count III) and is DENIED as to Plaintiff's Breach of Contract Claims (Counts I and II).

Done this 9th day of September, 2019.


/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE